UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

SHAWN L. SHIRLEY                PLAINTIFF

v.             CIVIL ACTION NO. 4:17-CV-P149-JHM

TERRY ELDER                 DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Shawn L. Shirley, a prisoner presently incarcerated at Roederer Correctional Complex, filed a *pro se* complaint under 42 U.S.C. § 1983 regarding events that occurred while he was incarcerated at Webster County Detention Center (WCDC). This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will dismiss the claims against Defendant Elder and allow Plaintiff to amend his complaint.

**I. SUMMARY OF CLAIMS**

Plaintiff brings this action against Terry Elder, the WCDC Jailer, in both his individual and official capacities. As requested relief, Plaintiff seeks monetary damages.

In his complaint, Plaintiff breaks his allegations into four separate sections. First, Plaintiff alleges a due process claim. As to this claim, he states as follows: "Anytime I file a greivance there is no greivance process. The only person that decides whether or not your greivance is greivable is the jailer himself, and the grievance is usually denied, and if it isn't then the problem is only temporarily fixed or not fixed at all."

Plaintiff's second claim involves "[l]ack of access to legal counsil or legal research materials." He asserts that he should have access to legal research materials "to research or

appeal court decisions."  According to Plaintiff, WCDC does not have a law library and, when he requests legal materials, he is told that "they will have to check on it."

Plaintiff's third claim is for "[i]nadequte food proportions."  As to this claim, Plaintiff states that WCDC "switched to Summit foods several month's ago."  Plaintiff states that after the switch was made, he filed several grievances complaining about "not meeting or exceeding the daily calorie intake or Kosher diet and the religious meals which specify no pork are being served on tray's that have pork served on them."  Plaintiff states that after filing grievances about the "food and proportions," the portions "have gotten smaller and smaller which is a direct retalliation from filing a complaint about religious Kosher diet."

In his fourth claim, Plaintiff alleges cruel and unusual punishment.  As to this claim, he states that after he filed complaints about his religious diet, Officers told him to pack up his stuff and moved him to "cell 148 which cell 148 is the racist cell known as the 'Nazi Dorm.'"  Plaintiff states that "upon refusing because being Jewish and my religion Judism and on Kosher diet.  Knowing there would be direct retalliation on me, because of filing greivances, I was placed in isolation."  According to Plaintiff, the following morning, Defendant Elder apologized to Plaintiff "And said He knew that it was wrong.  Kitchen said it would be easier to feed me and other inmate who was on Kosher Diet."

Plaintiff states that on October 28, 2017, during evening medication pass, Officer Ortiz told Plaintiff not to worry about his dinner tray because he had "taken care of it, [he] pissed on it."  Plaintiff asserts that this was "a direct retalliation for filing greivance the day before."  According to Plaintiff, on November 2, 2017, Defendant Elder met with Plaintiff about this matter, and Defendant Elder agreed that Officer Ortiz was not to be in Plaintiff's dorm or have

access to the food trays.  Plaintiff states that Officer Ortiz still has access to the food trays, and Plaintiff "feel[s] like Officer Ortiz is inappropriately handling or messing with [his] food."

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create

a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

#### A. Due Process Claim

Plaintiff asserts a Fifth Amendment due process violation. As to this claim, Plaintiff states as follows: (1) there is no grievance process at WCDC; (2) Defendant Elder is the person who decides whether or not your "greivance is greivable"; and (3) grievances are usually denied or problems are fixed only temporarily, if at all.

Prisoners do not possess a constitutional right to a prison grievance procedure. *Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 138 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Young v. Gundy*,

30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"). "All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases); *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure.").

Since a violation of a constitutional right is required in order to obtain relief under § 1983, Plaintiff's claims regarding the problems with the grievance procedures at WCDC fail to state a claim upon which relief may be granted, and they will be dismissed.

### B. Lack of Access to Legal Research Materials

Plaintiff alleges that he had no access to legal research materials while at WCDC. Further, Plaintiff states that "[t]o research or appeal court decisions they don't have a law library and when ask for legal materials the response is that they will have to check on it." Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right of access to the courts "is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement." *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003). The courts have recognized repeatedly that there is no constitutionally protected right of access to a law library. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (noting that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance"). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. at 825).

In order to state a claim for interference with access to the courts, a plaintiff must show an actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. at 351. "'[M]eaningful access to the courts is the

touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Furthermore, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Court held in *Christopher* that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

In the present case, Plaintiff fails to allege actual injury or prejudice to any pending criminal action or any other pending legal action or state how any legal action in which he is involved was hindered. Accordingly, Plaintiff's claim that he was denied access to a law library and legal research materials will be dismissed.

### C. Inadequate Food Portions

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Prison officials can be found liable for denying an inmate humane conditions if the officials know of and disregard an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 837. Thus, "deliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment."

7

*Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977). However, it is also true that "restrictive and even harsh" conditions of punishment do not necessarily violate the Eighth Amendment, since "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Thus, the Sixth Circuit has held that a diet solely consisting of food loaf does not violate the Eighth Amendment because the loaves met the nutritional and caloric requirements for humans. *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002). Likewise, food that "occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Id.* (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977); *see also Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002) ("If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated). .

Plaintiff states that he has filed grievances complaining about the meals not meeting required daily caloric intake and that the food portions are getting smaller and smaller. To show inadequate nourishment, courts typically require evidence of a connection between the challenged diet regimen and substantial weight loss. *See, e.g.*, *Sweeting v. Miller*, No. 7:14CV00187, 2015 WL 4773276, at *5 (W.D. Va. Aug. 12, 2015) (holding no Eighth Amendment claim where inmate claimed special allergy diet had caused weight loss but had provided no evidence of the severity of his weight loss); *Witschi v. N.C. Dep't of Pub. Safety*, No. 1:14-cv-68-FDW, 2014 WL 3735135, at *2 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite plaintiff's allegation that he was not being fed a sufficient diet that complied with medical orders because he did not allege facts suggesting that his health had

8

deteriorated as a result of his diet regimen); *Kemp v. Drago*, No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013) (holding that "Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment); *Escalante v. Huffman*, No. 7:10CV00211, 2011 WL 3107751, at *9 (W.D. Va. July 26, 2011) ("Inmates are not entitled to be served particular foods so long as the diets they receive are nutritionally adequate."). Plaintiff has provided no allegation of any health problems or loss of weight as a result of the alleged smaller portions.

Further, pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C.§ 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Plaintiff has not alleged the commission of a sexual act. He has also not alleged any physical injury in connection to being given allegedly inadequate meals of small portions. Without the showing of some physical injury associated with this claim, this claim fails. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that plaintiff's claim that he was uncomfortable after being sprayed with pepper spray was precluded by 42 U.S.C. § 1997e(e) since he failed to show more than a de minimis injury); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (affirming the district court's grant of summary judgment in favor of defendant since plaintiff failed to allege any physical injury arising out of the strip searches about which he complained); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040, at *1 (6th Cir. Dec. 13, 1999) (finding plaintiff's claim of being subjected to bad food, unsanitary conditions, and excessive heat without also claiming he had suffered any physical injury as a result of these conditions was meritless).

For these reasons, the claim regarding inadequate food portions and calories will be dismissed.

### D. Retaliation

Plaintiff's complaint alleges two instances of retaliation. First, Plaintiff alleges that he was placed in isolation by officers for filing grievances about needing a kosher diet because he is Jewish. According to Plaintiff, the day after he was placed in isolation, Defendant Elder "came and appoligized and said he knew that it was wrong." Second, Plaintiff asserts that Officer Ortiz told Plaintiff that he "pissed" on Plaintiff's dinner tray in retaliation for filing grievances. Plaintiff states that he and Defendant Elder agreed that Officer Ortiz would not be in Plaintiff's dorm or have contact with Plaintiff. However, Plaintiff states that Officer Ortiz still has access to his food trays, and Plaintiff feels like Officer Ortiz is "inappropriately handling or messing with [Plaintiff's] food."

#### 1. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff's official-capacity claims against Defendant Elder are actually against his employer, Webster County. *Id.* at 166; *see also Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 120 (1992).  Regarding the second issue, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  The Court will first address the second issue, *i.e.*, whether Webster County is responsible for the alleged constitutional violations.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) ("A municipality may be held liable under § 1983 if the municipality itself caused the constitutional deprivation.").  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d at 889.  Simply stated, "a plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government

11

body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that a municipal policy or custom of Webster County caused the alleged retaliation. As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Webster County, the complaint fails to establish a basis of liability against Webster County, and it fails to state a cognizable § 1983 claim.

Accordingly, the retaliation claims against Defendant Elder in his official capacity will be dismissed for failure to state a claim upon which relief may be granted.

## 2. Individual-Capacity Claims

"It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

As to the first claim of retaliation, the claim involving moving Plaintiff to an isolation cell, Plaintiff states that the day after he was placed in isolation, Defendant Elder apologized and stated that he knew it was wrong. However, Plaintiff fails to state how Defendant Elder was involved in Plaintiff being placed in isolation in the first place. As to the second claim of retaliation, the claim involving Officer Ortiz stating that he had urinated on Plaintiff's food tray, Plaintiff has not set forth any facts showing how Defendant Elder was involved in this alleged wrongdoing, and Plaintiff has not named Officer Ortiz as a Defendant in this case. Thus, the retaliation claims brought against Defendant Elder in his individual capacity fail.

However, "under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will allow Plaintiff an opportunity to amend his complaint to state how Defendant Elder was involved in the alleged retaliation, if Plaintiff asserts that he was so involved, and to name as Defendants other individuals he alleges were involved in the alleged retaliation.

## IV. ORDER

For the foregoing reasons, **IT IS ORDERED** as follows:

(1) The due process claim regarding the lack of a grievance process or an adequate grievance process is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2) The claim regarding lack of access to a law library or legal materials is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(3)  The claim regarding inadequate calories and food portions is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(4)  The retaliation claims are **DISMISSED** pursuant to 28 U U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

**IT IS FURTHER ORDERED** that within **30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint.  Plaintiff shall state how Defendant Elder, in his individual capacity, was involved in the alleged retaliatory placement of Plaintiff in isolation, if Plaintiff asserts that he was so involved, and/or Plaintiff shall name other Defendants in their individual capacities involved in the alleged retaliation and describe the specific facts surrounding how each Defendant allegedly violated his rights..

The Clerk of Court is **DIRECTED** to place the instant case number and the word "Amended" on a § 1983 complaint form and send it, along with two summons form, to Plaintiff for his completion.

**Plaintiff is WARNED that should he fail to file an amended complaint within 30 days, the Court will enter an Order dismissing the action for the reasons stated herein**.

Date: April 10, 2018

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Defendant
      Webster County Attorney
4414.003